# HACH ROSE SCHIRRIPA & CHEVERIE LLP
ATTORNEYS AT LAW

July 10, 2018

**VIA HAND**

Honorable Paul G. Gardephe
United States District Judge
Southern District of New York
40 Foley Square, Room 2204
New York, NY 10007

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7/31/18
```

MEMO ENDORSED

The parties' settlement agreement is approved by the Court

**SO ORDERED:**

*[signature]*

**Paul G. Gardephe, U.S.D.J.**

Dated: July 11, 2018

Re: *Maryam Khansari, et al v. St. Barnabas Hospital*
   Case No.: 15-cv-01803 (PGG) (HBP)

Dear Judge Gardephe:

We write on behalf of the parties in the above-referenced matter to provide Your Honor with a notice of the stipulated settlement and to seek the Court's approval, pursuant to *Cheeks v. Freeport Int'l Pancake House*, 796 F.3d 199, 206 (2d Cir. 2015). On March 27, 2018, after lengthy negotiations, and several years of intense fact discovery, which included in excess of thirty (30) depositions, reviewing thousands of pages of documents, analyzing payroll data, time records and other records produced by the Plaintiffs and St. Barnabas, briefing Defendant's motion for summary judgment and extensive trial preparation, the parties have reached an agreement to settle this matter for $1,500,000.00. The proposed settlement agreement and exhibits are annexed hereto as Exhibits to this *Cheeks* submission.

### *The Settlement is Fair and Reasonable*

The Parties are certain the Court will find that the settlement is "fair and reasonable." *See Wolinsky v. Scholastic, Inc.* 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). Generally, there is a "strong presumption in favor of finding a settlement fair," as "the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Crabtree v. Volkert, Inc.*, 2013 WL 593500, at *3 (S.D. Ala. Feb. 14, 2013). "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes." *In re Penthouse Executive Club Compensation Litig.*, No. 10-cv-1145, 20014 U.S. Dist. LEXIS 5864, at *22 (S.D.N.Y. Jan. 14, 2014) (noting that adversarial nature of litigated FLSA case is adequate indicator of fairness of settlement). In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Le v. SITA Info. Networking Computing USA, Inc.*, 2008 WL 724155, at *1 (E.D.N.Y. Mar. 13, 2008) (quoting *Lynn's Food Stores, Inc.*, 679 F.2d at 1354).

In determining whether the proposed settlement is fair and reasonable, a court should consider the totality of circumstances, including but not limited to the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which "the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses"; (3) the seriousness of the litigation risks faced by the parties; (4) whether "the settlement agreement

112 MADISON AVENUE, • 10TH FLOOR • NEW YORK, N.Y. 10016
TELEPHONE 212.213.8311 • FACSIMILE 212.779.0028 • WWW.HRSCLAW.COM

618   247-C

is the product of arm's-length bargaining between experienced counsel"; and (5) the possibility of fraud or collusion. *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335.

Other factors that district courts have examined when reviewing an FLSA settlement, include: (1) the complexity, expense, and likely duration of the litigation; (2) the stage of the proceedings and the amount of discovery completed; (3) the risks of establishing liability; (4) the risks of establishing damages; (5) the ability of the defendants to withstand a larger judgment; and (6) the range of reasonableness of the settlement amount in light of the best possible recovery and all the risks of litigation. *Abrar v 7-Eleven, Inc.*, 2016 WL 1465360, at *2 (E.D.N.Y. Apr. 14, 2016).

On March 11, 2015, the named Plaintiffs filed, in the United States District Court, Southern District of New York, Case Number 15-CV-1803 (PGG)(HBP), a complaint in an action asserting violations of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") (the "Complaint"). The Named Plaintiffs asserted class claims for unpaid overtime wages on behalf of current and former Clinicians employed at St. Barnabas Hospital, as well as individual claims for discrimination. On March 25, 2015, Plaintiffs filed their First Amended Complaint ("FAC") adding a third named Plaintiff, Iby DeGeorge-Gearey. On July 7, 2015, Plaintiffs filed their Second Amended Complaint ("SAC"), adding named Plaintiff Maria Daidone and new individual retaliation claims stemming from their recent termination from St. Barnabas.

On August 19, 2015, Defendant St. Barnabas Hospital ("Defendant" or "St. Barnabas") filed an Answer to the SAC, denying all material allegations of wrongdoing and asserting a number of defenses to the claims asserted in the Complaint. The parties then appeared for a conference Your Honor on August 20, 2015 at which time the Court issued a Case Management Order and an Order setting a briefing schedule for Plaintiffs' motion for conditional certification and court-authorized notice pursuant to FLSA §216(b) ("216(b) Motion").

On September 25, 2015, Plaintiffs filed their 216(b) Motion. Defendant filed its opposition on November 16, 2015, with Plaintiffs' reply filed on November 30, 2015. On May 12, 2016, Your Honor issued an order granting Plaintiffs' 216(b) Motion for leave to disseminate notice to potential members of the putative FLSA collective. Between September 6 and October 21, 2016, Plaintiffs filed Notices of Consents on behalf of fifty-two (52) opt-in plaintiffs. Plaintiffs thereafter withdrew Consents for fifteen opt-ins for various reasons, resulting in thirty-six (36) opt-in plaintiffs with proper FLSA claims.

The parties continued to engage in fact discovery prior to and during the pendency of Plaintiffs' 216(b) Motion. During this time, the parties conducted depositions of three named Plaintiffs, six defense witnesses and one non-party former employee. The parties also engaged in extensive document discovery, whereby Plaintiffs and St. Barnabas produced thousands of pages of time records, electronic medical record data ("EMR"), phone records, personnel files, clock-in and clock-out records, emails and other documents relating to Plaintiffs' individual discrimination claims, as well as their unpaid overtime claims. Throughout fact discovery, the parties made numerous applications to the Court to resolve various discovery disputes. The parties also attended in-person Discovery Hearings with Magistrate Judge Henry B. Pitman to address their respective motions to compel document and deposition discovery.

Following the completion of fact discovery on Plaintiffs' individual discrimination, retaliation and unpaid overtime claims and the close of the opt-in period, Defendant filed a motion for summary judgment on November 14, 2016 to dismiss the SAC.

On September 21, 2017, Your Honor issued an Order granting in part and denying in part Defendant's motion for summary judgment. Specifically, the Court denied the portions of Defendant's motion regarding Plaintiffs' FLSA overtime claims and Plaintiff Iby DeGeorge-Gearey's individual disability discrimination claim. The Order also directed the parties to file a joint pre-trial order, motions in *limine*, *voir dire* requests, and requests to charge by December 8, 2017, and scheduled trial to commence on January 8, 2018.

In light of the pending trial date, the parties began to contemplate a schedule for opt-in plaintiff discovery, which resulted in numerous submissions to the Court concerning opt-in discovery. Following oral argument before Magistrate Judge Pitman on October 17, 2017, the Court issued an Order regarding the scope of opt-in discovery, which permitted Defendant to conduct depositions of twenty (20) opt-in Plaintiffs by December 4, 2017 and directed Plaintiffs' to produce damages calculations for the thirty-seven opt-in Plaintiffs, along with documents supporting their unpaid overtime claims. Defendant thereafter conducted the twenty-one opt-in plaintiff depositions.

On October 31, 2017, Plaintiffs provided Defendant with an initial breakdown of Named Plaintiffs' and opt-in plaintiffs' damages calculation in connection with their FLSA claims.

On November 30, 2017, Plaintiffs identified economist, John Agogliati, as a witness who would testify regarding Plaintiffs' damages from unpaid overtime while working for St. Barnabas. Mr. Agogliati relied on significant portions of the record in developing his damage calculations, including pleadings, deposition testimony, and other discovery documents. As new information became available (such as the testimony from the ongoing depositions of the twenty opt-in plaintiffs), Mr. Agoglioti would revise his calculations. To perform his damages calculations, Mr. Agogliati carefully reviewed the sworn testimony of 23 different deponents, then compared the sworn testimony to Defendant's time records in order to calculate the overtime hours Plaintiffs worked. After determining that the data provided by the deposed Plaintiffs lent itself well to averaging, he then applied an average of the overtime hours worked by the deposed Plaintiffs to the smaller group of Plaintiffs who were not deposed.

As opt-in plaintiff discovery continued, the parties were simultaneously preparing their joint pre-trial order ("JPTO") and other pre-trial submissions in accordance with Your Honor's September 21, 2017 Order. On December 11, 2017, Defendant served Plaintiffs with a motion to decertify the conditionally certified collective action, which is currently *sub judice*. In order to allow the Court adequate time to address Defendant's decertification motion, the Court adjourned the trial to February 5, 2018. On January 31, 2018, the Court further adjourned the trial to April 23, 2018.

On January 23, 2018, in an effort to further settlement discussions, Plaintiffs provided Defendant with Mr. Agogliati's updated and final damages report, which calculated named Plaintiffs' and the thirty-six opt-in Plaintiffs' overtime damages as follows:

- Deposed Plaintiffs:
    - $841,652.91- pre-liquidated damages
    - $1,683,305.83 – with liquidated damages
- Not-Deposed
    - $503,692.38 – pre-liquidated damages
    - $1,007,384.76 – with liquidated damages
- **Total Damages**
    - **$1,345,345.29 – pre-liquidated damages**
    - **$2,609,690.59 – with liquidated damages**

Separately, named Plaintiff Iby DeGeorge-Gearey asserted total recoverable damages under her individual disability discrimination claim of approximately $125,000.

The $1,500,000.000 settlement is a tremendous result in light of the Plaintiffs' calculated damages, which reflect the total damages that Plaintiffs would be seeking at trial. Indeed, each Plaintiff will nearly be made whole with the money he or she receives from this settlement. To recoup nearly all unpaid wages while avoiding the time, expense and stress of going to trial is a win in any litigation, especially here where there are several pending pre-trial decisions that will impact the scope of trial.

Defendant contends that the Plaintiffs' time records demonstrate that Plaintiffs worked less than forty (40) hours a week during the relevant time period. Defendant further maintains that there are no records showing that Plaintiffs' worked overtime "off-the-clock" and, even if there was evidence of "off-the-clock" work, St. Barnabas cannot be held liable under the FLSA as they did not have knowledge of this work. According to Defendant, the Plaintiffs' damages, if any, is significantly less than the amounts calculated in Mr. Agogliati's January 23, 2018 calculations.

Finally, to the extent that St. Barnabas did fail to pay Plaintiffs overtime in violation of the FLSA, Defendant contends that such violations were not "willful" for purposes of extending the normal two-year statute of limitations to three years and that liquidated damages were not appropriate.

To further assess each Plaintiffs' claims, Plaintiffs' counsel conferred with each of the Plaintiffs regarding their work schedules, the time records produced by defendant, and other documents they produced, which was a time-consuming endeavor. Counsel for defendants produced thousands of pages of documents, including clock-in and clock-out records, EMR entry records, and telephone records, which purported to support their position that there is no evidence of Plaintiffs' performing work off-the-clock. After review of the Parties' records, there is a bona fide dispute as to liability and damages, *i.e.*, whether Plaintiffs did work off-the-clock overtime; if Defendant was aware of such work; if Defendant acted willfully; and if Plaintiffs are entitled to overtime damages, the amount of compensation due and whether liquidated damages should be awarded.

Counsel for the parties engaged in good faith settlement discussions throughout February and March, 2018. On March 27, 2018, the parties reached a settlement in principle regarding all claims and filed a joint letter with the Court requesting that all proceedings be stayed in light of

Hon. Paul G. Gardephe
July 10, 2018
Page -5

the settlement in principle. Given the sharp divergence in each parties' view of liability and damages, the parties recognize that a settlement will avoid the serious litigation risks they face if this matter proceeds to trial. Namely, the outcome of Defendant's pending motion for decertification will have a profound effect on framing the upcoming trial. A favorable decision for Defendant could prevent the named Plaintiffs from proceeding as a collective at trial and/or from using representative testimony to prove collective-wide damages. On the other hand, a favorable decision for Plaintiffs, increases the likelihood of allowing Plaintiffs to use representative testimony and damages sampling of a handful of Plaintiffs to prove the claims of 40 current and former Clinicians. Thus, a voluntary settlement with a payment plan is the best option for all parties.

In addition to Defendant's motion for decertification, there are other pre-trial disputes pending before the Court that could have a significant impact on a parties' success at trial, including: Defendant's Rule 72 Objection to Judge Pitman's October 17, 2017 Order regarding the scope of opt-in discovery; the parties' various motions *in limine* to preclude certain evidence and testimony that is critical to liability and damages; and Plaintiffs' application to amend the JPTO to include newly-discovered emails demonstrating how one of the opt-in Plaintiffs was performing work off-the-clock. And, ultimately, this Court's pre-trial rulings on the parties' proposed *voir dire* questions and proposed jury charges could also impact the outcome of this trial.

In contrast, the settlement eliminates the significant risks presented by the numerous pre-trial disputes pending before the Court. The settlement was the result of vigorous arms'-length negotiations. The Parties are represented by counsel experienced in wage and hour law and actively sought a settlement because the certainty of settlement is better than the uncertain outcome of a jury trial. Accordingly, the Settlement Agreement resolves *bona fide* disputes under circumstances supporting a finding that they are fair and reasonable.

Plaintiffs and Defendant desire to fully and finally resolve and settle Ms. DeGeorge-Gearey's individual disability discrimination claim and all FLSA claims that Plaintiffs had, have, or may have against any of the Releasees, and they respectfully submit that the settlement monies being paid to the named plaintiffs and the thirty-six opt-in plaintiffs are fair and reasonable when taking into consideration the totality of the circumstances. Please see the Schedule of Plaintiffs and Their Portion of the Settlement Amount, Exhibit "A" to the Agreement.

*The Court Should Approve Plaintiffs' Counsel's Reasonable Attorneys' Fees*

Lastly, the Court would find that Plaintiffs' counsel's one-third contingent fee arrangement with Plaintiffs is also fair and reasonable. In a wage and hour lawsuit, public policy favors a common fund attorneys' fee award. *Beckman v. KeyBank, N.A.*, 293 F.R.D. 477 (S.D.N.Y. 2013). Where relatively small claims can only be prosecuted through aggregate litigation, and the law relies on prosecution by "private attorneys general," attorneys who fill that role must be adequately compensated for their efforts. *McMahon v. Olivier Cheng Catering & Events, LLC*, No. 08-cv-8713, 2010 WL 2399328, at *7 (S.D.N.Y. Mar. 3, 2010).

Attorney's fees in FLSA settlements are examined "to ensure that 'the interest of plaintiffs' counsel in counsel's own compensation [did not] adversely affect the extent of the relief counsel

[procured] for the clients.'" *Lliguichuzhca*, 948 F. Supp. 2d at 366 (quoting *Wolinsky*, 900 F. Supp. 2d at 336). Here, the contingent fee arrangement with Plaintiffs clearly aligns Plaintiffs' and Plaintiffs' counsels' interest in the outcome of the litigation. The fact that Plaintiffs' counsel would receive no more than one-third of Plaintiffs' total recovery is proof positive that the settlement does not favor plaintiffs' counsel over plaintiffs themselves. *See id.*

One-third contingency fees are frequently approved as part of FLSA settlements in this district. *See Abrar v. 7-Eleven, Inc.*, No. 14-cv-6315 (ADS) (AKT), 2016 U.S. Dist. LEXIS 50416, at *6-7 (E.D.N.Y. Apr. 14, 2016); *see also Romero v. Westbury Jeep Chrysler Dodge, Inc.*, No. 15CV4145 (ADS) (SIL), 2016 U.S. Dist. LEXIS 46462, 2016 WL 1369389, at *2 (E.D.N.Y. Apr. 6, 2016) (Spatt, J) (recognizing that courts in this Circuit have found award of attorneys' fees of one third of total settlement amount to be reasonable); *Meza v. 317 Amsterdam Corp.*, No. 14-CV-9007 (VSB), 2015 U.S. Dist. LEXIS 166890, 2015 WL 9161791, at *2 (S.D.N.Y. Dec 14, 2015) ("[C]ourts regularly approve attorney's fees of one-third of the settlement amount in FLSA cases.") (collecting cases); *Gaspar v. Pers. Touch Moving, Inc.*, No. 13-CV-8187 (AJN), 2015 U.S. Dist. LEXIS 162243, 2015 WL 7871036, at *2 (S.D.N.Y. Dec. 3, 2015) ("Fee awards representing one third of the total recovery are common in this District . . . . The Court therefore considers the requested fees to be reasonable.").

The practice in the Second Circuit has been to apply the percentage of the fund method in common fund cases like this one. *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) (holding that percentage method "directly aligns the interests of the class and its counsel" and "provides a powerful incentive for the efficient prosecution and early resolution of litigation"). The Court can then loosely apply the lodestar method as a "cross check" when applying the percentage of the fund method, and are not required to scrutinize the fee records as rigorously." *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000); *see In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 468 (S.D.N.Y. 2004) (using an "implied lodestar" for the lodestar cross check). Courts consider "whether the proposed attorney's fees are reasonable based on: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation ...; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Id.*

Here, Plaintiffs' counsel has been vigorously litigating this matter for more than three years. Before initiating this Action, plaintiffs' counsel conducted a thorough investigation into the Named Plaintiffs' individual discrimination claims, as well as the class-wide unpaid overtime claims. They also conducted extensive legal and background research on the underlying merits of the claims, the likelihood of obtaining liquidated damages, the proper measure of damages, the likelihood of class/collective certification and Defendant's affirmative defenses. Plaintiffs' counsel coordinated and collected documents from thirty-nine individuals, reviewed thousands of pages of documents produced by Defendants (sometimes requiring judicial intervention), prepared and appeared for twenty-nine depositions, worked with an economist to calculate collective-wide damages, and successfully briefed Plaintiffs' 216(b) Motion and opposition to Defendants' motion for summary judgment. Plaintiffs' counsel also fully prepared this case for trial, which required a significant amount of attorney hours given the size and scope of this 39-plaintiff action. Finally, Plaintiffs' counsel has engaged in vigorous arms-length negotiations with defense counsel over the past several months. In performing these tasks, plaintiffs' counsel expended approximately

1,851.25 hours of attorney, paralegal and staff member time – an aggregate lodestar of $681,130.31 These hours are reasonable for a case like this one and were compiled from contemporaneous time records maintained by plaintiffs' law firm.[1]

The complexities of this case and the risk of litigation and trial are far from ordinary. Indeed, significant hurdles exist which could have potentially impeded a successful resolution of this matter if it were to proceed to trial.

Likewise, plaintiffs' counsel's skill and experience litigating wage and hour cases were directly responsible for the favorable settlement and weigh in favor of granting the requested fees. *Velez v. Majik Cleaning Serv., Inc.*, No. 03-cv-8698, 2007 WL 7232783 (S.D.N.Y. Jun. 25, 2007). Here, plaintiffs' counsel's skill and experience lead to the negotiated settlement which represents ***100% of pre-liquidated damages – or approximately 54.8% of total recoverable damages including liquidated damages***.

In conclusion, the parties request that the Court find the proposed Settlement fair and reasonable and award Plaintiffs' counsel attorneys' fees of one third of the Settlement Fund -- $463,889.77 -- and litigation and settlement administration expenses of $94,273.47. The parties are happy to appear for a fairness hearing if the Court desires.

Respectfully submitted,

/Frank R. Schirripa

FRS/smp
Encl.

cc:   James S. Frank, Esq. (*via* email w/ encl.)
      Kenneth W. DiGia, Esq. (*via* email w/ encl.)
      Paul DeCamp, Esq. (*via* email w/ encl.)
      (Attorneys for Defendant)

---

[1] Moreover, the requested fee is not based solely on time and effort already expended, rather it is meant to compensate counsel for time that will be spent administering the settlement in the future.